**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**CAPTURION NETWORK, LLC**                                                           **PLAINTIFF**

**v.**                                              **CIVIL ACTION # 2:08cv232-KS-MTP**

**DAKTRONICS, INC. and ANDREW RICE**                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion to remand [Doc. #8] (November 24, 2008) filed by Plaintiff Capturion Network, LLC ("Capturion"). Defendants Daktronics, Inc. ("Daktronics") and Andrew Rice oppose the motion. [Docs. #14, #15] (February 11, 2009). Capturion argues that Daktronics' removal of this case to federal court on the basis of diversity jurisdiction was procedurally defective under 28 U.S.C. § 1446(b). Capturion's motion presents two questions:

> [1] Whether a notice of removal must be filed within 30 days of service of the state court complaint on the first-served defendant despite the fact that (a) the complaint contains no specific allegation that damages exceed the jurisdictional minimum and (b) the complaint erroneously alleges that the plaintiff and the first-served defendant are citizens of the same state.
>
> [2] If a defendant permissibly refrains from removing within 30 days of service of the state court complaint, is the defendant precluded from removing until he receives "an amended pleading, motion, order or other paper" indicating that "the case is one which is or has become removable."

For reasons to follow, the Court concludes that the Defendants' removal was procedurally defective because it did not occur within 30 days of service of the state court complaint or within 30 days of receipt of some "other paper." The motion to remand should therefore be **granted**.

# I. BACKGROUND

This lawsuit arises from the competitive bidding between Capturion and Daktronics to install a high definition video display scoreboard for the University of Mississippi Athletic Department. *Id.* Capturion alleges that its initial bid of approximately $5.2 million was the low bid for the project and was about $2 million lower than Daktronics' bid. *Id.* Capturion alleges that the Defendants tortuously interfered in the process, preventing Capturion from being awarded the contract. *Id.* The contract was ultimately awarded to Daktronics for slightly less than $6 million. *Id.* Capturion alleges that Daktronics and/or Rice are liable for defamation, breach of fiduciary duty, disclosure of trade secrets, tortious interference, unfair competition, and for punitive damages because their actions resulted in Capturion's lost profits (from both the University of Mississippi contract and future contracts), damaged business reputation, and the like. *Id.*

Capturion's state court complaint seeks an unspecified amount of compensatory and punitive damages from the Defendants. *Id.* In addition, Capturion's state court complaint erroneously alleged that Capturion and Rice are both citizens of Mississippi. It is now undisputed that the parties in this case are diverse. Plaintiff Capturion is a single member LLC whose sole member is a citizen of Mississippi. [Doc. #18] (April 8, 2009). Daktronics is incorporated in South Dakota and has its primary place of business in South Dakota. Compl. at ¶ 2; [Doc. #14] (February 11, 2009); [Doc. #14-3]. Rice is a citizen of Alabama. [Doc. #14-4].

Capturion filed suit against the Defendants in Mississippi state court in July 2008. [Doc. #1-2]. Capturion served Rice with a copy of the complaint on September 24, 2008. Def.'s Br. at 1 [Doc. #14]; Pl.'s Br. at 1 [Doc. #16] (February 19, 2009). Capturion served Daktronics on

September 29, 2008. Def.'s Exh. A [Doc. #14-2]. Daktronics alleges that it learned from its human resources department on October 22, 2008, that Rice – a former employee – had moved out of Mississippi earlier in 2008. [Doc. #20-2]. On October 24, 2008, Daktronics' general counsel spoke with Rice and learned that he had become a citizen of Alabama in June 2008. *Id.* Based on that information, Daktronics concluded that the requirements for federal diversity jurisdiction were met and filed a notice of removal. The notice of removal was filed on October 27, 2008, 33 days after Capturion had served Rice. [Doc. #1]. Rice joined in the removal. [Doc. #1-3].

Capturion timely filed the instant motion to remand on the basis that the removal was procedurally defective. [Doc. #8]. Daktronics filed a response conceding that removal had been procedurally defective because it was removed more than 30 days after the complaint was filed. [Doc. #12] (December 8, 2008). Rice did not file a response to the motion to remand. After reviewing the parties' initial memoranda, the Court concluded there existed a colorable issue as to whether Daktronics' removal was timely. [Doc. #13] (January 27, 2009); *see generally* 28 U.S.C. § 1446(b). Wishing to avoid the needless waste of resources that would arise if the case was remanded and re-removed, the Court advised counsel of its conclusion and allowed an additional opportunity to submit memoranda and/or evidence concerning whether removal was procedurally defective and whether the Court has subject matter jurisdiction. *See* Order [Doc. #13] (January 27, 2009). The parties have since filed their supplemental memoranda and the motion is ripe for adjudication. *See* [Docs. #14, #15, #16].

## II. STANDARD OF REVIEW

"A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *see* 28 U.S.C. § 1441(a). The Constitution provides, in Article III, § 2, that "the judicial Power [of the United States] shall extend . . . to Controversies . . . between Citizens of different States." The current general-diversity statute permits federal district court jurisdiction over suits for more than $75,000 "between . . . citizens of different States." 28 U.S.C. § 1332(a). "The removing party bears the burden of showing that federal jurisdiction exists." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

The time periods during which removal is permitted are set forth in 28 U.S.C. § 1446(b). The time limits are not jurisdictional, but are nonetheless "mandatory and therefore strictly construed." *Alfonso v. Military Dep't*, No. 07-3778 C/W 07-3867, 2007 U.S. Dist. LEXIS 84984, *16 (E.D. La. Nov. 15, 2007) (citing *Getty Oil Corp.*, 841 F.2d at 1263); *accord Harden v. Field Mem. Cmty. Hosp.*, 516 F. Supp. 2d 600, 606 (S.D.Miss. 2007) ("District courts have no power to overlook procedural errors relating to the notice of removal . . . ."). The removal statutes are to be construed "strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996).

## III. APPLICATION AND ANALYSIS

Capturion contends that Daktronics' removal to federal court was untimely.[1] 28 U.S.C. § 1446(b), which governs the time-period for removal, states:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .
>
> *If the case stated by the initial pleading is not removable*, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b) (emphasis added). Thus, "[i]n essence . . . § 1446(b) provides a two-step test for determining whether a defendant timely removed a case." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir. 1992). Under the first paragraph, "if the case stated by the initial pleading is removable, then notice of removal must be filed within thirty days from the receipt of the initial pleading." *Id.* Thus, generally "the thirty-day period begins to run as soon as the first defendant is served" and "all served defendants must join in the petition no later than thirty days from the day on which the first defendant was served." *Getty Oil Corp., Div. of Texaco, Inc. v. Insurance Co. of North America*, 841 F.2d 1254, 1262-1263 (5th Cir. 1988). However, "if the case stated by the initial pleading is not removable, then notice of removal must be filed within thirty days from the receipt of an amended pleading, motion, order, or other paper from which the defendant can ascertain that the case is removable." *Id.*

---

[1] Capturion argues first that removal was untimely because Daktronics filed the notice of removal more than 30 days after Rice was served with the complaint. Second, Capturion argues that removal was untimely because the two Defendants had not both joined in the removal until more than 30 days after Rice was served with the complaint.

**A. Daktronics' Removal Was Not Defective Under the First Paragraph of § 1446(b)**

In *Chapman v. Powermatic*, the Fifth Circuit held that service of the state court complaint upon the defendant(s) commences the 30-day clock in the first paragraph of § 1446(b) "only when [the state court] pleading *affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." 969 F.2d at 163 (emphasis added). Although the court purported to adopt a "bright line rule," *id.*, the holding in *Chapman* has led to a split among the district courts in this circuit, which has festered since the case was decided in 1992.

Courts in this circuit have generally interpreted *Chapman* in one of two ways. The first contingent of courts has interpreted *Chapman* to hold that the 30-day clock under the statute's first paragraph commences only in those instances in which a plaintiff specifies in the state court complaint that the amount of damages sought exceeds the jurisdictional minimum. *E.g.*, *Staton v. Wells Fargo Bank*, N.A., 192 F. Supp. 2d 681, 683-684 (N.D.Tex. 2002); *Krantz v. Pep Boys - Manny, Moe, & Jack, Inc.*, No. 08-1011, 2008 U.S. Dist. LEXIS 59326 (E.D.La. July 24, 2008); *Freeman v. Witco Corp.*, 984 F. Supp. 443, 446-47 (E.D.La. 1997). The second contingent of courts – probably the larger contingent – has construed *Chapman* as holding that service of the state court complaint can commence the 30-day clock even if it contains no specific allegation of the amount of damages sought. *E.g.*, *Stone v. Nirvana Apts.*, No. SA-08-CA-656, 2008 U.S. Dist. LEXIS 93090, 15-16 (W.D.Tex. Oct. 17, 2008) (citing *Valadez v. Cogema Mining, Inc.*, No. C-06-176, 2006 U.S. Dist. LEXIS 51409 (S.D.Tex. July 26, 2006)); *Century Assets Corp. v. Solow*, 88 F. Supp. 2d 659, 662-63 (E.D. Tex. 2000); *Fire Ins. Exch. v. Target Corp.*, 2008 U.S. Dist. LEXIS 58318, 9-10 (S.D. Tex. Aug. 1, 2008); *GSD Logistics, LLC v. A&R Packaging &*

*Distrib. Servs.*, No. 1:06-CV-1086, 2007 U.S. Dist. LEXIS 578 (S.D.Miss. Jan. 2, 2007). These latter courts have held that if the nature of the injuries or damages described in the complaint would place a reasonable defendant on notice that the amount of damages exceeds the jurisdictional minimum, then the complaint "reveals on its face" the amount in controversy per *Chapman*. Several of these courts have reasoned that *Chapman's* bright line rule should not be treated as a "head in the sand rule." *E.g.*, *Schild v. Tymco, Inc.*, 842 F. Supp. 225, 226 (M.D.La. 1994); *Carleton v. CRC Indus., Inc.*, 49 F. Supp. 2d 961, 963 (S.D.Tex. 1999); *Fire Ins. Exch. v. Target Corp.*, No. H-08-1786, 2008 U.S. Dist. LEXIS 58318, *9-10 n.4 (S.D.Tex. Aug. 1, 2008); *Wise v. Bayer*, 281 F. Supp. 2d 878, 884 (W.D.La. 2003).

To navigate this split, it is necessary to answer two questions. First, what standard did *Chapman* set forth? Second, is that standard still binding in this circuit?

> **1.** ***Chapman* set forth a bright line rule stating that the 30-day clock in the first paragraph of § 1446(b) commences only when the state court complaint contains a specific allegation of the amount in controversy**

The key language in *Chapman* is the court's holding that the first paragraph's 30-day clock commences only if the state court pleading "*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount." 969 F.2d at 163 (emphasis added). With due respect to those courts that have reached the opposite conclusion, this Court finds the phrase "affirmatively reveals on its face" to unambiguously require that the complaint contain an express specification of the amount of damages sought. Had the *Chapman* court omitted the word "affirmatively" from its holding, perhaps the result would be different. The inclusion of the word "affirmatively," however, connotes that the state court complaint must contain an express declaration specifying the amount of damages sought. *See* OXFORD ENGLISH

7

DICTIONARY (2nd Ed. 1989) (defining "affirmatively" as "[b]y way of assertion of express declaration.").

This court's interpretation of *Chapman's* holding is consistent with much of the other language in the opinion. For example, this interpretation of *Chapman* seems incontrovertible given the *Chapman* court's statement that:

> We believe the better policy is to focus the parties' and the court's attention on what the initial pleading sets forth, by adopting *a bright line rule requiring the plaintiff*, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, *to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount*.

969 F.2d at 163 (emphasis added). In addition, the nature of the facts in *Chapman* indicate the court would have been hostile to the suggested "head in the sand" exception to the bright line rule. In *Chapman*, the defendant knew before the suit was filed that the amount in controversy exceeded the jurisdictional minimum, yet the court still held that the 30-day clock had not commenced. *Id.* at 160-61. Before reaching this holding, *Chapman* criticized a district court opinion which had held that the 30-day clock can commence if the defendant had actual knowledge that the damages sought exceeded the jurisdictional minimum. *Id.* at 162-63 (citing *Mielke v. Allstate Ins. Co.*, 472 F. Supp. 851 (E.D.Mich. 1979)) (reasoning that such a rule would "needlessly inject uncertainty into a court's inquiry."); *see also Bosky v. Kroger Tex., LP*, 288 F.3d 208, 210 (5th Cir. 2002) (noting that *Chapman* had "rejected a due diligence requirement for determining whether a case is removable"). Consequently, *Chapman* forecloses the possibility that the 30-day clock could commence based solely on a defendant's notice that the amount in controversy exceeds the jurisdictional minimum.

In sum, *Chapman's* clear holding is that the 30-day clock in the first paragraph of §

8

1446(b) does not commence unless the state court complaint expressly specifies an amount of damages sought by the plaintiff(s). Because *Chapman* was decided in 1992, however, this Court must consider the possibility that the bright line rule set forth in *Chapman* is no longer binding law.

        2.      *Chapman's* "specific allegation" standard remains binding in this circuit

*Chapman* has never been expressly overruled or even criticized by a court in this circuit. In fact, because the Fifth Circuit is mostly precluded from reviewing district court orders remanding cases to state court, *see* 28 U.S.C. § 1447(d), the issues pertaining to the 30-day clock in the first paragraph of § 1446(b) have rarely been presented to the Fifth Circuit since *Chapman* was decided. By this Court's count, the Fifth Circuit has cited *Chapman* in only five opinions, four of which provide no insight into the decision. *See generally Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996); *Adobbati v. Guardian Life*, 213 F.3d 638, 638 (5th Cir. 2000); *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000). This is true, though issues concerning the 30-day clocks have arisen with relative frequency.

The Fifth Circuit last referenced *Chapman* in *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 210 (5th Cir. 2002). Adding to the confusion that predated the decision, *Bosky* casts doubt on both sides of the aforementioned split among the district courts.

In the first few pages of the opinion, the *Bosky* court embraced the interpretation that *Chapman* requires a specific allegation of damages. The *Bosky* court deferred to *Chapman* on the subject without qualification and in a manner consistent with this Court's reading of *Chapman*. Critically, the *Bosky* court quoted with approval the following language from

9

*Chapman*:

> the better policy is to focus the parties' and the court's attention on what the initial pleading sets forth, by adopting a bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading *a specific allegation* that damages are in excess of the federal jurisdictional amount.

*Id.* (emphasis added) (citing *Chapman*, 969 F.2d at 163). Given this express recognition of and deference to the "specific allegation" requirement from *Chapman*, it is very difficult to construe *Bosky* as rejecting the requirement.

Later in the opinion, however, the court's reasoning implies just such a rejection. The *Bosky* court contrasted the "key language" in the first and second paragraphs of § 1446(b) as follows:

> "Setting forth," the key language of the first paragraph, encompasses a broader range of information that can trigger a time limit based on notice than would "ascertained," the pivotal term in the second paragraph. . . . *The latter, in contrast to the former, seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally*.

*Bosky*, 288 F.3d at 211 (emphasis added). This language is extremely hard to reconcile with *Chapman*: if under *Chapman* the first paragraph of § 1446(b) requires "a specific allegation that damages are in excess of the federal jurisdictional amount," 969 F.2d at 163, how can the second paragraph "require a greater level of certainty" than the first? *See Fire Ins. Exch. v. Target Corp.*, No. H-08-1786, 2008 U.S. Dist. LEXIS 58318 (S.D.Tex. Aug. 1, 2008) ("reading *Chapman* to require a specific allegation that damages are in excess of the federal jurisdictional minimum for an initial pleading to trigger the thirty-day removal window . . . would conflict with *Bosky*.").

Hence, courts in this circuit now find themselves between the proverbial rock (*Chapman*)

and hard place (*Bosky*) when faced with issues concerning the 30-day clock in the first paragraph of § 1446(b). On the one hand, courts can abide the lucid, bright line rule from *Chapman* which is quoted favorably in *Bosky*. On the other hand, courts can adopt an unnatural reading of *Chapman*, which is consistent with the logical implications of *Bosky*.

Given the clarity with which *Chapman* set forth the "specific allegation" requirement, this Court believes it would be inappropriate to eschew the standard absent some express instruction to do so from the Fifth Circuit or Supreme Court. Because no such instruction has been given, this Court will continue to abide *Chapman's* clear requirement that the complaint contain a "specific allegation" of the amount in controversy.

To be clear, the *Bosky* court gave no indication whatsoever that it intended to *alter* the standard governing the 30-day clock in the first paragraph of § 1446(b). The *Bosky* court, which was focused on the second paragraph of § 1446(b), explained that the standard concerning the first paragraph's 30-day clock was merely instructive "for comparative purposes." 288 F.3d at 210. The court then expressly deferred to *Chapman* as to what standard governed the first paragraph. Thus, *Bosky* cannot be read plausibly to have announced a new standard governing the first paragraph of § 1446(b).

Moreover, even if *Bosky* had intended to overrule or abrogate *Chapman*, it is not clear that the three-judge panel had the authority to do so. The Fifth Circuit has long recognized that one panel cannot overturn the decision of a previous panel. *See Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001) ("It is well-established in this circuit that one panel of this Court may not overrule another."); *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 425-26 (5th Cir.1987) ("one panel cannot overturn another panel, regardless of how wrong the

earlier panel decision may seem to be."); *Tex. Refrigeration Supply v. FDIC*, 953 F.2d 975, 983 (5th Cir.1992) ("Heretofore, this circuit has carefully abided by the well-tested maxim that one panel of this court cannot overrule another, even if it disagrees with the prior panel's holding."). Since *Chapman* clearly set forth the "specific allegation" requirement and *Bosky* cited the requirement favorably, the requirement cannot be discarded due merely to the implications that seem to inhere from *Bosky's* reasoning.[2]

Because the "specific allegation" requirement from *Chapman* remains binding in this circuit, little analysis is required in the case at bar. Capturion's state court complaint did not initiate the 30-day clock under the first paragraph of § 1446(b) because it did not specify any amount of damages sought. Daktronics' notice of removal, filed 33 days after service on Rice, was therefore not untimely under the first paragraph of § 1446(b).[3]

---

[2] The *Bosky* court cited several cases for the proposition that "specific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage claims, can provide sufficient notice that an action is removable so as to trigger the time limit for filing a notice of removal" under the first paragraph. 288 F.3d at 208 (citing *Marcel v. Pool Co.*, 5 F.3d 81, 82-85 (5th Cir. 1993); (*De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408-12 (5th Cir. 1995)). This ostensibly creates an exception to *Chapman's* holding that the 30-day clock commences only when "the plaintiff . . . place[s] in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount." 969 F.2d at 163. There is some reason to be dubious of this exception: notably, the cases cited by the *Bosky* court do not even mention the 30-day removal period in § 1446(b) and do not cite *Chapman*. *See Marcel*, 5 F.3d 81; *De Aguilar*, 47 F.3d 1404. Because Capturion's complaint contains no specific damage estimates the viability of this exception is immaterial to the Court's holding that service of the complaint did not commence the 30-day clock under the first paragraph of § 1446(b). The exception is nonetheless noteworthy here because it might help to reconcile the *Bosky* court's conclusion that commencement of the 30-day clock in the second paragraph requires a "greater level of certainty" than does commencement of the 30-day clock in the first paragraph. *Bosky*, 288 F.3d at 211.

[3] Because the state court complaint's lack of specification as to the amount in controversy entails that the 30-day clock did not commence, the Court need not determine whether Capturion's misrepresentation of Rice's citizenship was likewise sufficient to preclude the

**B. Daktronics' Removal Was Procedurally Defective Under the Second Paragraph of § 1446(b)**

Having determined that Daktronics' removal was not procedurally defective under the first paragraph of § 1446(b), the Court now turns to the statute's second paragraph. The statute's second paragraph permits removal within 30 days of the defendant receipt "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b). Thus, the issue is whether all removals from state to federal court must occur during one of the statute's two 30-day time periods. If so, the Defendants would have the burden of establishing receipt of a satisfactory "other paper." If not, the Defendants would need only to establish that the elements of diversity jurisdiction are present in this case.

Unfortunately, this issue is also one which has yielded a split among the district courts in this circuit. In *Brandon v. Toyota Motor Corp.*, the district court noted that the 30-day clocks in § 1446(b) are not "jurisdictional requirement[s]" and a court would therefore "have removal jurisdiction over [a] case even assuming that the thirty-day removal period not begun to run at the time of removal." 240 F. Supp. 2d 604, 607 n.6. (S.D.Miss. 2002) (citing *Tabbert, Hahn, Earnest, Webble, P.C. v. Lanza*, 94 F. Supp. 2d 1010, 1012 (S.D.Ind. 2000)). In contrast, in *Joiner v. Miss. AG Co.*, the district court held that without some "other paper," the second paragraph of § 1446(b) was not implicated, and the defendants therefore "were not afforded a second thirty-day opportunity in which to remove" the case. No. 3:06-CV-337, 2006 WL 2884523, *3 (S.D.Miss. Oct. 10, 2006). Similarly, in *Harden v. Field Memorial Comm. Hosp.*,

---

clock's commencement. *See* Pl.'s Compl. at ¶¶ 1 -2 [Doc. #1-2] (October 27, 2008).

the district court indicated that absent some "other paper," the removal jurisdiction would "yet to be triggered" and remand would be appropriate. 516 F. Supp. 2d 600, 608 (S.D.Miss. 2007).

This Court agrees with the conclusions of the *Lanza* and *Harden* courts. Section 1446(b) is optimally read to require that removal be effected within 30 days of either service of the initial complaint or within 30 days of receipt "of a copy of an amended pleading, motion, order or other paper." *See* § 1446(b).

The Court reaches this conclusion based on both the text of § 1446(b) and the language in *Chapman*. The text of the statute clearly envisions two possibilities: a case will either be removable as stated in the initial pleading or it will not.[4] *See* § 1446(b) ("If the case stated by the initial pleading is not removable . . . ."). This interpretation of the statute is consistent with *Chapman*. In *Chapman*, the court explained that "the second paragraph of § 1446(b) requires that the defendant remove the case, *if at all*, within 30 days after receipt of an 'other paper.'" 969 F.2d at 164 (emphasis added); *see also id.* at 163 n.6 (recognizing the possibility that a defendant might "choose to remove a case *within thirty days from its receipt of an initial pleading* that does not reveal on its face that the plaintiff is seeking damages in excess of the jurisdictional minimum" (emphasis added)).

Here, the Defendants do not argue, and the caselaw would not support a finding, that either Defendant received an "other paper." An "other paper" must be received by the defendant

---

[4] Paradoxically, it is well-established in this circuit that a defendant can remove a case that is "not removable pursuant to the first paragraph of § 1446(b)" based on the contents of the state court complaint. *See Chapman*, 969 F.2d at 163 n.6 (acknowledging that defendants may remove cases within 30 days from receipt of "an initial pleading that does not reveal on its face that the plaintiff is seeking damages in excess of the jurisdictional minimum); *see generally De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

after the initial pleading is filed. *Chapman*, 969 F.2d at 415. In addition, the "other paper" must be generated by "a voluntary act by the plaintiff." *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) (citing *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 254 (5th Cir. 1961)).

The only potential "other paper" in this case is an "Employee Change Form," which indicates that Rice had moved out of Mississippi in June 2008. [Doc. #20-5]. Daktronics did not receive this document from Capturion. Instead, Daktronics had possession of this document even before the case was filed. As a result, the "Employee Change Form" does not constitute an "other paper" under § 1446(b) and the 30-day clock in the statute's second paragraph has not commenced. Consequently, Daktronics did not file the notice of removal during the pendency of either 30-day clock and the case must therefore be remanded.[5]

---

[5] The Court is not yet presented with the question of whether a subsequent removal by the Defendants would be procedurally proper. The Court had hoped to obviate the need for remand and re-removal when it solicited additional information from the parties but, for the reasons stated in this Memorandum Opinion and Order, is compelled to remand the case at this juncture. At this time, the Court merely notes that Capturion's argument that "there can be no second notice of removal because there can be no new grounds for removal" appears to be contradicted by binding caselaw. *See, e.g.*, *S.W.S. Erectors*, 72 F.3d 489, 492-93 (5th Cir. 1996) ("The prohibition against removal 'on the same ground' does not concern the theory on which federal jurisdiction exists (i.e., federal question or diversity jurisdiction), *but rather the pleading or event that made the case removable* . . . 'the fact that a case was initially removed and remanded does not itself preclude removal a second time around. A defendant who fails in an attempt to remove on the initial pleadings can file a second removal petition when subsequent pleadings or events reveal a new and different ground for removal'" (quoting *One Sylvan Road N. Assocs. v. Lark Int'l, Ltd.*, 889 F. Supp. 60, 62, 63 (D.Conn. 1995)); *Chapman*, 969 F.2d at 164-65 (plaintiff's answer to an interrogatory indicating that damages exceeded the jurisdictional amount constituted an "other paper" triggering the 30-day clock under the second paragraph of § 1446(b) even though the defendant had known since before the state court complaint was filed that the amount in controversy exceeded the jurisdictional minimum).

## IV. CONCLUSION

The case stated in Capturion's state court complaint was not removable and therefore did not commence the 30-day clock for removal under the first paragraph of § 1446(b). As a result, the Defendants' removal was not untimely pursuant to the statute's first paragraph. However, because the Defendants have received no "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is . . . removable," the notice of removal was premature under the second paragraph of § 1446(b).

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Plaintiff's motion to remand [Doc. #8] is **granted**.

SO ORDERED AND ADJUDGED on this, the 29th day of May, 2009.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE